UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDY A. WHITE,

        Plaintiff,

v.                                  Case No. 5:05-CV-1
                                  Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

Plaintiff was born on August 1, 1963 and completed the 11th grade (AR 51, 68).[2] She stated that she became disabled on January 1, 2001 (AR 51). Plaintiff had previous employment as a cashier, cleaner, computer worker and temporary laborer (AR 81-88). Plaintiff identified her disabling conditions as "gout, kidney stones, depression . . . walking, standing, overwhelmed, stress, irritable, [and] short tempered" (AR 62). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on April 28, 2004 (AR 26-34). This decision, which was later approved by the Appeals

_____

[1]   The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2]   Citations to the administrative record will be referenced as (AR "page #").

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 33).  Second, the ALJ found that she suffered from severe impairments of "chronic back and neck pain; history of gout; and depression with a mood disorder" (AR 33).  In a different portion of the decision, the ALJ stated that plaintiff had the following severe impairments "generalized arthralgias, history of asthma and depression" (AR 28).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 33).  The ALJ decided at the fourth step that plaintiff had the following residual functional capacity (RFC):

> sedentary with a sit/stand option at will with no prolonged walking and no work around heights or dangerous moving machinery.  The claimant is also limited in performing simple unskilled work with limited contact with the public and co-workers.

(AR 33).  The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 34).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 34).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in the lower peninsula of Michigan: assembler (4,000 jobs); sorter/packager (2,000 jobs); and security monitor (2,000 jobs) (AR 34). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 33).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 34).

## III.  ANALYSIS

Plaintiff raises three issues on appeal.

### A.    Did the ALJ base his decision on the substantial evidence of the whole record in denying disability benefits?

### B.    Did the ALJ err when finding plaintiff lacked credibility?

Plaintiff contends that the medical record supports a finding that her complaints are credible and that the testimony and medical records support that finding.  Plaintiff contends that the ALJ committed the following errors: (1) he improperly rejected a report from the Meridian Psychological Consultants (Meridian) that plaintiff had a Global Assessment of Functioning (GAF) score of 35 to 40;[3]  (2) he erroneously stated that plaintiff could take care of her 10-year-old child; (3) he did not note a finding of degenerative disc disease; and (4) he improperly opined that plaintiff suffered no side effects from her medications.

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See  Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id*. at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

*See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

### 1.    Plaintiff's GAF score and her ability to care for her child

Plaintiff contends that her assigned GAF scores indicate that she is disabled (AR 248). As an initial matter, plaintiff's GAF scores are not dispositive on the issue of disability.  The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score.  *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).  *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted).

Plaintiff's GAF score of 35 was assigned on her initial assessment of February 20, 2003 (AR 248, 270).  When plaintiff was discharged from treatment on January 12, 2004, she was assigned a GAF score of 40 (AR 274). These GAF scores lie within the 31 to 40 range, which indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)"  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.

These GAF scores over the span of 11 months suggest only minor improvement. Plaintiff's final assessment from Meridian states that she was alert; that her "stream of talk" was clear, spontaneous and logical; that her knowledge and intellectual functioning were average; and that her insight and judgment were fair (AR 273). Plaintiff was also described as tearful, angry, anxious, depressed, and compulsive (AR 273). The ALJ gave "little weight" to plaintiff's GAF scores, finding that the scores "are clearly not supported by any objective medical evidence of record and are totally inconsistent with the overall evidence of record, including claimant's testimony as to her daily activities" (AR 29). In this regard, the ALJ observed that plaintiff was the sole care provider for her 10 year old child, and that these low GAF scores were contradicted by plaintiff's testimony that she lives independently, shops, watches television and takes care of her child (AR 29, 33).

Plaintiff contends that nothing in the record supports the ALJ's claim that plaintiff "is the sole care provider for her 10 year old child" (AR 33). The court notes that plaintiff's niece stated in a daily activities questionnaire that plaintiff does not watch children (AR 94). Defendant admits that "[w]ith respect to [p]laintiff's mental condition, the ALJ incorrectly indicated that [p]laintiff testified to extensive activities." Defendant's Brief at 6. Nevertheless, I find the ALJ's decision to give little weight to plaintiff's GAF scores is supported by substantial evidence based upon the whole record.

At the hearing, plaintiff testified that she lives in a town home with her 11-year-old child (AR 301). In August 2002, plaintiff reported to two consultative examiners, Thomas W. Keaveney, M.D., and J. Keith Ostien, Ph. D., that she lived in her own residence with her son (AR 164, 168). Plaintiff reported to Dr. Ostien that her daily activities included "getting up in the

7

morning, taking care of her son, cleaning up around her apartment, resting and sleeping much of the day, watching television, fixing dinner, and watching television in the evenings" (AR 165). Nothing in the record indicates that any other person cared for plaintiff's son. Based upon this record, the ALJ could properly find that plaintiff was the sole care giver for her child.  Furthermore, Dr. Ostien to concluded that plaintiff had a significantly higher GAF score of 54 (AR 166).  This score lies within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR* at p. 34. Accordingly, the ALJ could properly give little weight to the GAF scores of 35 and 40 assigned by Meridian.

### 2.    Degenerative disc disease

Plaintiff claims that she is disabled by back, hand and leg pain (AR 32, 305).  The ALJ rejected this claim for lack of medical evidence, finding that "there are few objective medical findings to confirm problems related to any of these conditions" (AR 32).  Plaintiff contends that ALJ improperly rejected this claim because he never noted a finding of degenerative disc disease at C5-6.  An MRI from August 4, 2002 identified moderate degenerative disc disease at the C5-6 level (AR 231).  Plaintiff correctly points out that the ALJ's decision did not address this MRI.   In evaluating plaintiff's physical complaints, the ALJ relied on the findings of Dr. Keaveney that plaintiff had tenderness over the lower lumbar area, tenderness in the right lower quadrant, and tenderness to palpation in most of the joints in the upper and lower extremities, but that plaintiff had a normal range of motion (AR 28).  Although Dr. Keaveney examined plaintiff after the MRI (i.e., August 30, 2002), the doctor made no reference to the MRI results (AR 168-74).

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen*, 964 F.2d at 529, quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). Here, the ALJ rejected plaintiff's claim of disabling pain for lack of objective medical findings (AR 32). However, the record indicates that plaintiff had objective evidence of an underlying medical condition, i.e., moderate degenerative disc disease at C5-6.

Based upon this record, the ALJ's conclusion, i.e., that there are few objective medical findings to confirm problems related to plaintiff's alleged back, hand and leg pain, is not supported by substantial evidence. Because plaintiff was not represented by counsel at the administrative hearing, the ALJ had a "special duty" to develop the administrative record and ensure a fair hearing for her. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). Here, the ALJ's decision is based upon the consultative examination by Dr. Keaveney. As the court previously discussed, the doctor's report did not reference the MRI results, which were obtained a few weeks prior to the consultative examination. These results merited consideration by both the doctor and the ALJ. In addition, the MRI results are set forth in the record and should have been addressed by the ALJ as part of his special duty to develop the record. *Id.*

9

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation of plaintiff's allegation of disabling pain.  On remand, the ALJ should consider the MRI results and, if necessary, obtain another consultative examination.

### 3. Medication side effects

Next, plaintiff contends that the ALJ incorrectly concluded that she suffered no side effects from her medication.  In this regard, the ALJ found that although plaintiff takes various medications for her symptoms, including Flexeril, Darvocet, Vicodin and Paxil, "these do not include any real strong analgesics, and the claimant complained of no significant side effects from the medications that she does take" (AR 28, 32). In her work history report, plaintiff stated that she takes six different medications, including medicine for gout, arthritis, and inhalers for her asthma (AR 88).  In her activities questionnaire, plaintiff stated: that her inhaler causes her to nap; that amptriptyline causes dizziness and drowsiness; that Azmacor causes hoarseness, headaches, dizziness and light headedness; and that Paxil gives her trouble sleeping and causes diarrhea (AR 91).  She also complained that her medications make her drowsy, slow, "verbally out of control," short tempered, and prevent her from staying on her feet for long periods of time (AR 91).   Plaintiff also identified several side effects in her disability report: Paxil, prescribed for depression, caused nausea; Zyloprim, prescribed for gout, caused skin rash and itching; and Allopuril, also prescribed for gout, caused sores (AR 67).

Based on this record, the ALJ's conclusion that plaintiff "complained of no significant side effects" (AR 28) is not supported by the evidence.  Plaintiff's complaints of medication side effects are set forth in the record and should have been developed by the ALJ.  *See Duncan*, 801 F.2d at 856; *Lashley*, 708 F.2d at 1051-52.  Accordingly, this matter should be reversed and remanded

pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation of plaintiff's allegation that she is disabled by the side effects of her medication.  On remand, the ALJ should review all of plaintiff's medications and determine the impact of the side effects on her ability to perform work.

### C.  Did the ALJ fail to ask a hypothetical record based upon the complete record to the VE?

Finally, plaintiff contends that the ALJ failed to pose accurate hypothetical questions to the VE.  An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs.  *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments.  *Id.*   However, a hypothetical question need only include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ's hypothetical questions failed "to assume the extensiveness of her chronic pain and physical limitations."  Plaintiff's Brief at 22.  In his first hypothetical question, the ALJ assumed that plaintiff had the same limitations as set forth in the RFC determination (AR 33, 317). In response to this hypothetical question, the VE testified that plaintiff could perform some 8,000 sedentary jobs (AR 317).  In a second hypothetical question, the ALJ asked the VE to assume that plaintiff's testimony was credible and supported by the medical

11

evidence (AR 318).  Given this assumption, the VE testified that plaintiff would not be able to perform the identified sedentary jobs on a full-time basis (AR 318).  The VE explained as follows:

> [Plaintiff] testified that she's not able to do much physically.  She's in pain, her legs, hands, back.  She has leg pain relative to gout, has fallen in her basement.  She's unable to dress herself completely, cook or do housework.  Her meds make her groggy and sleepy.  And [sic] one medication makes her light headed.  She's depressed, she has daily crying spells.  This would be work preclusive.

(AR 318).

The VE's testimony indicates that plaintiff could not perform any of the 8,000 identified jobs due to pain in her legs, hands and back, and the side effects of her medication (AR 318).  As the court previously discussed, the ALJ's findings with respect to plaintiff's pain and the side effects of her medication are not supported by substantial evidence.  The vocational evidence is based upon the ALJ's unsupported findings as set forth in the hypothetical question.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g) for re-evaluation of the vocational evidence.

## IV.    Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate plaintiff's alleged back pain, the side effects of her medication and the vocational evidence.

Dated:  January 23, 2006                   /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge

12

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).